Simon, J.
delivered the opinion of the court.
This case arises out of the last will and testament of Alexander Milno, deceased, which contains the following disposition: “ Unto the town of Fochabers (place of his nativity) I give andbeqneathe the sum of one hundred thousand dollars, to be employed in establishing a free school, with sufficient competent teachers, and supporting the said school, in the said town of Fochabers, for the use of the parishes of Belize and Ordiffshf The legacy is now claimed by Charles Gordon, Duke of Richmond and Lenox, superior as feudal lord of the burgh of barony and town of Fochabers; and by Alexander Marquis, baron bailie and sole magistrate for the administration of justice in said burgh of barony. They further allege that by virtue of the powers specially conferred upon Charles Gordon by a meeting of the inhabitants of the town of Fochabers duly convened, and at a meeting of the kirk session of the parish of Bellie, also duly convened, they are authorized to demand and receivb the said legacy, for the purpose of applying the same in conformity with the said testamentary disposition; and that accordingly, they have appointed two agents and attorneys in fact, to represent them in the premises, and to receive on their account the amount of the legacy. They pray to he recognized as the persons authorized to claim said legacy, and that the amount thereof he paid over to their said agents, &e.
[321] The defendants, to wit, the three executors of the last will of the deceased, the attorney appointed by the court to represent the absent heirs, the society for the relief of destitute orphan hoys in the city of Lafayette, and the Poydras female asylum, joined issue by denying the capacity of the petitioners to take under the will; and by submitting to the court whether under the laws of Louisiana, the petitioners, being aliens, can he entitled to recover the legacy by them claimed for the purposes mentioned in the will.
The court of probates rejected the plaintiffs’ demand, gave judgment in favor of the defendants, and said plaintiffs appealed. '
Our attention has been called to two principal questions arising out of the denial of the plaintiffs’ capacity to take under the will; and it is contended *197 by the appellees: 1. That the town of Fochabers isnot incorporated, and that therefore there is no person or corporation capable of receiving the legacy.
2. That under the laws of Louisiana, the plaintiffs, as foreigners, cannot take under the will, because the laws of Scotland prohibit similar dispositions from being made in favor of a citizen of Louisiana.
I. Fochabers is a burgh of barony under the ducal family of Gordon, and governed by a bailie of his grace’s appointment. Chambers’ Gazetteer of Scotland, p. 437. It was incorporated as a burgh of barony by a royal charter of James the 6th, King of Scots, of the 10th of February, 1598, and forms one of a very large class whieh in Scotland are well known by the designation of Burghs of Barony. By the laws of Scotland, a burgh of barony is a corporate body, erected by the sovereign, and made up of the inhabitants of a determinate tract of ground, with jurisdiction annexed to it; they were erected by the sovereign either to be holden of himself or in favor of subjects who enjoyed the property or superiority of the lands contained in the charter; from this difference, arises the division of Burghs royal, and Burghs of regality or Barony. Erskine’s Instit. of the Law of Scotland, b. 1st, [322] tit. 4, sects. 20 and 30. The general law of incorporation applies to the Burghs of Barony, and they have power to administer their common good, to elect officers, to make by-laws, &c.; Bell’s Principles of the Law of Scotland, No. 2131. Under this system of laws, the incidents toa corporation are these: 1. As a legal person the corporation has persona standi in judhio ; it may sue or be sued, grant and receive, by its corporate name, &e.: 4. It may purchase or hold lauds, and be infeoffed by its corporate name and title; and 5. It has perpetual succession, &e. Id. No. 2169. The power or authority of the Duke of Richmond in regard to the burgh of Fochabers, is acquired by inheritance, was originally derived from the crown, and is constituted by the royal charter of 1598; it has a form of government and a local magistracy, and the baron bailie is the chief and sole magistrate of the burgli, whieh office is now filled by Alexander Marquis, one of the plaintiffs. The evidence of distinguished jurists on the laws of Scotland, has been taken on this particular subject, from whieh it clearly appears that Burghs of Barony are proper corporations; andas such they are known and recognized in the Scotch law; those corporations are accounted persons, because they have their own proper stock, rights and privileges as persons have, and as such are capable of receiving and holding property either absolutely or in trust by their representatives. Under the law of Scotland, if a bequest similar to the one in question had been made there by a will good in point of form, it could be claimed on behalf of the town or burgh of barony of Fochabers for -the use of and in trust for the said town, and parish of Bellie, including the lands of Ordifish; and the same could be competently claimed by the baron and the baron bailie to be held on behalf of the inhabitants of the parish, including those of the town itself and the lands of Ordifish. In such ease, the baron and baron bailie are empowered to act as trustees for tbe corporation, as they are [323] authorized to represent them in all circumstances where it may he necessary to claim or enforce their rights or privileges as a corporate body. We must *198 therefore conclude that the inhabitants óf the town of Fochabers have aright to enjoy the privileges allowed them as a corporation, that as such they have capacity to receive by donations mier vivos or mortis ecmsa, and that they are legally and properly represented in this suit by their trustees.
II. According to the 1477th article of the La. Code, “ Donations inter vivos and mortis causa may be made in favor of a stranger, when the laws of his country do not prohibit similar dispositions from being made in favor of a citizen of this State.” This establishes a reciprocal- right in favor of the citizens of the two countries, and it behooves us therefore to inquire first, into the nature of the legacy under our laws — and 2d, to examine whether, under the laws of Scotland, a similar bequest may he made in favor of a citizen of Louisiana.
1. The legacy made by Alexander Milne, to the town of Fochabers, is one of a sum of money; and being a particular legacy, it ought to be discharged in preference to all others. La. Oode, art. 1627. Being also a movable legacy, it is to be paid out of the funds of the succession; but in default of such funds sufficient to discharge it, it is to be paid, as long as the estate is administered by the testamentary executors, indifferently out of the personal and real estate of the testator. It becomes a charge on the whole estate, and when the heir claims to be put in possession of the succession, and to take the seizin from the testamentary executor, he is bound to provide for the payment of the movable or pecuniary legacies, by offering to put in the hands of the executor a sum sufficient to satisfy them. La. Code, arts. 1661, 1662,1663 and 1664; thus, such a legacy becomes a personal debt of the heir, which he must discharge as any other debt due by the succession, vith[324] out any distinction being made whether it is to he satisfied out of his personal or real property; and interest is due thereon from the day of the demand. La. Code, art. 1619. The legacy under consideration is therefore a simple pecuniary bequest, which must he acquitted by the executors or by the heirs in the same manner as if it were a debt of the estate.
Before proceeding to examine the second question, it may he proper to remark, that the provision contained in the art. 1477, of our Code, is limited exclusively to the incapacity of receiving donations inter vivos and mortis causa, and that nothing in our laws shows that foreigners are excluded from the acquisition of real or personal property, -by will or succession, and that they are not capable of inheriting either. La. Code, arts. 881, 882. The capacity of aliens to transmit their estates ab intestato, and to inherit from others in Louisiana, is on the contrary clearly shown by the art. 945, which declares that slaves alone are incapable of either; and as under the art. 946, the incapacity of heirs is not presumed, he who alleges it must prove it. There is therefore nothing in the laws of this State that excludes aliens from the inheritance of any kind of property.
2. The incapacity of aliens by the English and Scotch laws is only ex • tended to their holding lands or acquiring heritage either by purchase or succession. Erskine’s Inst., h. 3, tit. 10, sect. 10; Beil, Nos. 1644, 2185; 1 Blackstone’s Com. 272, et seq.; 2 Kent’s Com. 61. Tinder the laws of Scotland, an alien may acquire property in goods, money, and movable estate, and *199 make a will and sue for personal debts; Bell, No. 2135 ; and under those of England, he may even he a mortgagee and recover his debt in countries where there is a positive prohibition to hold lands. Powell on Mortgages, 106. The opinion of the Lord Advocate of Scotland and of the other jurists who have been examined on this subject, demonstrates clearly that if the legacy had occurred in a Scotch instrument, it would, by the laws of [325] Scotland, have been considered as a pure bequest of a sum of money and not of heritable property; and that if a person in Scotland had bequeathed a legacy in similar terms to one of our citizens, the courts of law in that country would without hesitation give effect to the legacy, The reason is drawn from the very expressions of the Scotch laws, and is very obvious: A legacy, in general, according to those laws, is defined to be a donation or bequest mortis causa of a sum, or subject, or universitas, to be paid or delivered by the executor out of the free movable estate of the deceased, to a person named or plainly denominated; and a general legacy, or the legatum quantitatis, is a legacy not of a special article or debt, but indefinite, of so much money, or fungibles, or movables of a particular description or class. Bell, Nos. 1871, 1873. In this case, the bequest of a fixed sum of money, is purely movable in its nature, and is not one depending on, secured by or in any manner attached to heritable property; it must consequently be paid out of the estate, without any reference to any particular real estate, and under the Scotch laws would come within the definition of the legatum quantitatis. On this subject, the Lord Advocate informs us further, that although by the law of Scotland, an alien could not hold heritable property there, either by purchase or succession, there is no doubt that if a Scotchman died, leaving to a citizen of Louisiana, a sum of money payable out of personal estate, or out of real estate directed by him to be sold, or payable by the disponees in the universitas of his estate, heritable and movable, such citizen would recover that sum in the courts of Scotland, notwithstanding a deficiency in the personal estate to pay the testator’s personal debts or preferable bequests. These principles of the Scotch law, which are derived from the Roman or civil law, are very similar to ours. La. Code, art. 1661. They contemplate the payment of a pecuniary legacy in the same light as the payment of a debt due by the estate; it must be discharged; and the nature and the object of the legacy being alone to be considered, the legatee cannot claim but [326] the money, without his being entitled to exercise any right or control over the heritable property, out of which the funds are to be raised to satisfy the bequest •, if it he necessary to sell lands for the purpose of discharging such movable legacies, the price of such lands so sold by the owner or by the executor becomes movable, and as such, must be applied to the payment of those legacies; although it cannot be said that such legacies are debts secured upon land, and of a heritable character. Bell, Nos. 1478, 1479. We have an instance of a bequest made by an English subject to the United States, the amount of which, of about one hundred thousand pounds, was regularly paid over to our government: It is the bequest made by James Smithson, of London, to the United States, for founding at Washington an establishment to be styled “ the Smithson Institution, for the increase and diffusion of knowledge *200 among men.” In December, 1835, tbo President of the United States transmitted to Congress a report from the Secretary of State, together with the papers and documents relative to said bequest; Congress acted upon the recommendation of the President, and a law was passed accordingly for the purpose of accepting the bequest and the trust. See vol. 2, document 25,1st session 24th Congress, vol. 9, Laws of the United States, p. 439. We see no reason, therefore, why the same reciprocity should not be extended under the laws of Louisiana, to English and Scotch subjects, when it is clear that according to tho laws of their country, our citizens would be entitled to recover similar legacies.
Much has been said, however, to convince us that the legacy is heritable in its nature and effect; and it has been urged that all that proceeds from immovable property is immovable, and that any sum of money secured upon real property is a heritable bond. According to the Scoth laws, all subjects (things) which were immovable by the Boman law, as a field or whatever is [32V] either part of the ground, or united to it, fundo annexum, as minerals, houses, wells, &o., are heritable; and heritable objects are those which on the death of the proprietor, thus descend to the heir. Erskine, b. 2, tit. 2, sects. 3 and 4; Bell, Nos. 1470,1471, 1472. Bights connected with or affecting lands, though not feudalized, are heritable; as servitudes, reversions, faculties and rights to challenge deeds relating to heritage. Bell, No. 1485; Erskine, b- 2, tit. 2, sect. 5. Thus, naked charters, or the disposition of the property or superiority of lands, or heritable bonds, though seizin has not proceeded on them, are heritable, because they are all rights of or securities upon land, and the proprietor or creditor may complete them by seizin, when he shall think proper. On the other hand, whatever has no resemblance to a feudal right, and produces no annual fruits, is movable; by this rule, cash, jewels, &c., are all movable subjects; all subjects bearing interest ex lege, are movable in all respects; simple personal debts and engagements, whether presently due or payable at a future term with interest, are movable; as also the price of lands sold by the owner. Erskine, b. 2, tit. 2, sects. 7 and 13; Bell, No. 1479. The distinction is very clear and obvious, and it suffices to state that the reason of the Scottish bonds being heritable, originates evidently from the feudal tenure of the lands, and from the creditors being invested with or having a right to the seizin of the land, which none but a subject can hold. ' Bell, Nos. 1485,1478,1493 and 1644. Erskine, pp. 216, 222, 402. In the present case, how could the legacy, if made in Scotland, be considered as a heritable bond ? We have already demonstrated that the legatee has no right connected with or affecting lands, and less so is he entitled to be invested with the seizin of any land; the bequest does not carry with it any right of infeftment (enfeoffment), its amount is to be paid in money out of the movable estate of the deceased; it becomes the debt or personal obligation of the heir; he must satisfy it as any other debt, not only out of the funds of the succession, but, if necessary, out of any funds proceeding [328] from the sale of property, either personal or real, to be sold or disposed of by the executors or by himself for-that purpose.
We think, therefore, that the doctrine of heritable bonds would not ap *201 ply to the bequest in question, if made in Scotland; and that the judge a quo erred in not giving full effect to the legacy under consideration.
With regard to the interest allowed by law, from the day of the demand of the legacy, it cannot he included in our judgment, because it has not been claimed.
It is therefore ordered, adjudged and decreed, that the judgment of the court of probates be annulled, avoided and reversed; and proceeding to give such judgment as, in our opinion, ought to have been rendered in the court below, it is ordered, adjudged and decreed, that the plaintiffs be recognized as the persons duly authorized and entitled to claim and receive the legacy of one hundred thousand dollar's mentioned in the last will and testament of Alexander Milne, deceased, as being made to the town of Fochabers; and that the amount thereof be paid over to plaintiffs’ agents named in the petition, by the testamentary executors of the said last will and testament, with costs in both courts.