E. HIESTAND v. THE CITY OF NEW ORLEANS.

The city of New Orleans is a political corporation recognized by the Constitution of the State, to which the Constitution has imparted a portion of the executive and judicial functions of the government.

The Common Council of New Orleans is within the sphere of its constitutional and legal attributions, a Legislature ; and in the exercise of its power in relation to the collection of taxes due to the city, may empower a particular individual to collect the same for a fixed compensation, but they have the right at any time to change, modify, or repeal a resolution conferring such power, with the sole condition, that the city shall be liable for any compensation earned under and in pursuance of the resolution before its repeal.

The repeal of such a resolution is not the violation of a contract.

The commission of five per cent. under the Act of the Legislature of 1852, to the Assistant City Attorney, upon tax bills collected by suit, is due to the officer who obtains the judgment, and not to the one who collects the amount of it.

The law of hiring personal services for a term, has no application to such dealing between parties ; if any contract would be thereby created, it would be the contract of mandate, and revocable at the will of the principal. C. C. 2997.

APPEAL from the Sixth District Court of New Orleans, *Howell, J. C. Roselius*, for plaintiff. *J. J. Michel*, for defendant and appellant.

BUCHANAN, J. It is a fallacy to call the resolution of the Common Council of the city of New Orleans of the 23d of May, 1856, a contract; and the repeal of that resolution, a violation of a contract, which subjects the corporation to damages.

The city of New Orleans is a political corporation, as observed in argument by one of the counsel of plaintiff—a political corporation recognized by the Constitution of the State, to which the Constitution has imparted a portion of the executive and judicial functions of the government, and to which the Legislature has communicated many legislative functions; among them, that most important of all, the power of taxation. In fine, the city charter of the 20th of March, 1856, makes a systematic division of the powers of this corporation, into legislative, executive and judicial.

The Common Council of New Orleans is, then, within the sphere of its constitutional and legal attributions, a Legislature ; and for the purpose of carrying out the objects of its organization, is necessarily invested with all power of regulating those details which are not specified, and which could not be specified in its organic law. Among those details, are necessarily comprised such as relate to the collection of the taxes, licences, fines, and other dues of the city, so far as not provided for by the city charter.

Now, on examining the amended charter of the 20th of March, 1856, which was in force from the date of its passage, we find that all that is said therein, in relation to the enforcement of the payment of *taxes* due the city, is contained in the first and second paragraphs of the 107th section. Session Acts of 1856, p. 159. It is there enacted, that the Treasurer shall put in suit, on the second Monday of May in each year, in a court or courts of competent jurisdiction, all unpaid bills for taxes levied upon property assessed ; and that such suits shall be prosecuted in a particular form.

But there is nothing in this charter declaring that any particular law-officer of the city shall be charged with the professional management of suits for taxes, nor that any particular compensation shall be allowed for their collection. The

third paragraph of the same section of the charter, is more explicit on those subjects, in relation to the collection of fines and licences due the city, which, says that paragraph, are to be collected by the Assistant City Attorney, who shall receive, as compensation for such services, ten per cent., to be paid by the party in default.

Whether this distinction in the provisions of the charter in relation to the two classes of city dues, has been made by the lawgiver *ex industria*, as was intimated in argument by one of the learned counsel for plaintiff, or whether it was the result of inadvertence, is of no great consequence.

It suffices that the charter is silent on the subject now under consideration, to make the legislative control of these details by the Common Council, attach. The resolution of the 23d of May, 1856, was an exercise of that control. That resolution consists of two sections. The first provides: " That *E. Hiestand*, Assistant City Attorney, be, and he is hereby authorized to make up, for the city of New Orleans, a tabular statement showing the condition of each suit for tax bills, due the city for the years 1852 and 1853, the same to be submitted to the Common Council."

The second section is as follows: " Be it further resolved, that he is hereby empowered to collect the same, making up his reports monthly, and paying the amounts collected into the City Treasury, for which services he shall be entitled to receive, as full compensation, ten per cent. on the amount collected ; he, in all cases, to pay the costs for which the city may be liable, for attempting to enforce payment of the same."

We observe, that in this resolution, the plaintiff is mentioned by name. But that, we conceive, by no means restrained the Common Council in the exercise of their legislative functions. Whether it was made the duty of the Assistant City Attorney, or of *E. Hiestand*, the Assistant City Attorney, or of *E. Hiestand*, or any other named person, without an official designation, to make the tabular statement of tax suits, and whether this or that person, official or otherwise, was empowered to collect the tax bills due the city for 1852 and 1853, or for any other years, the Common Council, as the body in whom the legislative power of the city of New Orleans was vested by the third section of the charter, had, in our opinion, the absolute and uncontrolled right to change, modify and repeal, at any time that to it might seem meet, the said resolution and all its parts ; with the sole condition, that the city should be liable for the payment of any compensation that had been earned under and in pursuance of the resolution previous to its modification or repeal.

When, therefore, the Common Council, by its resolution of the 14th of November, 1856, authorized *F. C. Laville*, Assistant City Attorney, to collect the amount of judgments obtained since the Consolidation Act, in favor of the city of New Orleans, by his predecessor in office, and allowed him a compensation of two-and-a-half per cent. for making such collections ; and when, in the same resolution, all resolutions or ordinances contrary thereto, were repealed, the council acted within the purview of its legislative authority in the premises, and the plaintiff has no legal right to complain of its action, much less to charge that action as a violation of a contract.

We shall next proceed to inquire what are the particulars of the demand of plaintiff against the defendant in this action.

First, plaintiff alleges that, while holding the office of Assistant City Attorney, he collected and paid into the city Treasury the sum of forty-nine thousand

HIKSTAND
*v.*
NEW ORLEANS.

three hundred and forty-eight dollars, proceeds of judgments obtained by his predecessor in office, upon tax bills for city taxes for the years 1852 and 1853, (the commissions for obtaining which judgments, plaintiff admits his said predecessor is entitled to,) for the collection and payment of which sum plaintiff has received nothing ; and his services therefor are charged in his petition as being reasonably worth a commission of five per centum on the amount so collected and paid ; which commission amounts to the sum of two thousand four hundred and sixty-seven dollars.

This item of plaintiff's claim is inadmissible. It was decided by this court, in *Heistand* v. *Labatt*, 11 An. 30, that the commission of five per cent., under the Act of 1852, to the Assistant City Attorney, upon tax bills collected by suit, was due to the officer who obtained the judgment, and not to him who collected the amount of that judgment. There is nothing in that law which imposes upon the city the payment of a second commission of five per centum, and the claim, as for a *quantum meruit*, cannot be allowed.

The plaintiff must be considered as having accepted office, with reference to the legislation regulating the duties and the emoluments of the office which he accepted.

The plaintiff next claims ten per cent. commission on the sum of $8,378 05, collected and paid into the City Treasury by him, under the resolution of 23d May, 1856, above recited. The proof sustains this claim, which was allowed by the judgment of the District Court.

The next item is a claim of twenty-five thousand dollars as damages for an alleged violation of a contract, being ten per cent. on the total amount of outstanding and uncollected taxes due the city for the years 1852 and 1853, and which alleged violation of contract consists in the passage of the resolution of the 14th of November, 1856, above alluded to.

We have already disposed of this, by far the most important portion of plaintiff's demand, in the commencement of this opinion.

We will add, that the law of the hiring of personal services for a term, and the decisions upon that subject cited in argument, have no application to the dealings between the parties to this suit, which, if a contract at all, would be the contract of mandate ; a contract essentially revocable at the will of the principal. C. C. 2997.

It is, therefore, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

MERRICK, C. J. Without assenting to all the reasoning of the court in its opinion, I concur in the decree pronounced by the majority of the court.

VOORHIES, J., absent.